In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1532

EMMA CEHOVIC-DIXNEUF,

*Plaintiff-Appellee,*

*v.*

LISA WONG,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-CV-8785 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED JANUARY 16, 2018 — DECIDED JULY 11, 2018

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* The federal Employee Retirement Income Security Act of 1974 (ERISA) requires administrators of employee benefit plans to comply with the documents that control the plans. 29 U.S.C. § 1104(a)(1)(D). In the case of life insurance policies, that means death benefits are paid to the beneficiary designated in the policy, notwithstanding equitable arguments or claims that others might assert.

In this case, the deceased employee was Georges Cehovic, whose employer offered its employees an insurance benefit plan through ReliaStar Life Insurance Company. Georges had two policies under the plan with ReliaStar: a basic life insurance policy with a death benefit of $263,000, and a supplemental life insurance policy with a death benefit of $788,000. On both policies, Georges listed his sister, plaintiff Emma Cehovic-Dixneuf, as the sole and primary beneficiary. After Georges died, his ex-wife, defendant Lisa Wong, claimed that she and the child she had with Georges were entitled to the death benefits from the supplemental policy. Any equitable arguments Wong might make can gain no traction, however, if the supplemental life insurance policy is covered by ERISA.

The district court granted summary judgment for plaintiff Cehovic-Dixneuf, finding that the supplemental life insurance policy is indeed covered by ERISA. We affirm. Defendant Wong failed to offer evidence to the district court showing any genuine issue of any fact material to the case. She did not present her evidentiary objections to Cehovic-Dixneuf's evidence in the district court when she could and should have.

As noted, ERISA ordinarily requires plan administrators to manage plans according to the governing documents, including beneficiary designations. *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285, 288 (2009) (beneficiary designation for pension plan upon participant's death); *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) (life insurance benefits under ERISA plan awarded to designated beneficiary, who was decedent's ex-wife, despite contrary state law); *Melton v. Melton*, 324 F.3d 941 (7th Cir. 2003) (same)**.** It is virtually impossible to avoid a written designation of a beneficiary for a life insurance policy governed by ERISA. To

avoid the effect of beneficiary designation, therefore, Wong has argued in the district court and on appeal that the supplemental policy is not governed by ERISA.

This question on the merits is governed by our decision in *Postma v. Paul Revere Life Insurance Co.*, 223 F.3d 533 (7th Cir. 2000). We explained there the scope of ERISA's coverage of insurance for the benefit of employees and the scope of the United States Department of Labor's so-called safe-harbor regulation, which offers a way to exclude insurance for employees from ERISA coverage. We explained in *Postma* that five elements must be shown for ERISA to cover an employee welfare plan like an insurance plan:

> (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries.

*Id*. at 537, quoting *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986). All of those criteria are satisfied here. The life insurance policy was part of a program established by Georges's employer for the purpose of providing death benefits to participants or their beneficiaries.

Wong asserts, however, that the supplemental life insurance policy should fall outside ERISA because Georges paid all of the premiums on the policy himself (and, she says, with

marital assets), without any direct subsidy from the employer. That is not enough to avoid ERISA coverage, however. The safe-harbor regulation excludes from coverage some group insurance programs, but with four requirements that must all be satisfied:

> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). Wong cannot satisfy the third required element here. When an employer has "performed all administrative functions associated with the maintenance of the Policy," the policy does not meet that requirement. *Postma*, 223 F.3d at 538.

In this record, the key information comes from the summary plan description. It makes clear that the employer maintained substantial administrative functions beyond the very limited ones allowed by the safe harbor provision. The employer was listed as the policyholder for all components of the plan, of which the supplemental life insurance policy was but one menu item. The plan description also made clear that the supplemental life insurance policy would remain part of the employer's group policy, but could be converted to an individual life insurance policy in certain situations. See *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875 (9th Cir. 2001) (converted policy not subject to ERISA); *Demars v. Cigna Corp.*, 173 F.3d 443, 450 (1st Cir. 1999) (same). But see *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 28 (4th Cir. 1997) (questioning whether converted policy was subject to ERISA); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1346–47 (11th Cir. 1994) (same). Nothing in the record shows that Georges executed such a conversion.

To avoid application of ERISA, Wong argues that we should sever the supplemental life insurance policy, for which Georges (the employee) paid all premiums, for consideration separate from the basic life insurance policy and the other benefits in the employer's group insurance plan. We rejected such an argument in *Postma*, explaining that for "purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled." 233 F.3d at 538. This

rule finds support in every other circuit that has considered this issue. See *Menkes v. Prudential Ins. Co. of America*, 762 F.3d 285, 292 (3d Cir. 2014); *Gross v. Sun Life Assurance Co. of Canada*, 734 F.3d 1, 8 (1st Cir. 2013); *Sgro v. Danone Waters of North America, Inc.*, 532 F.3d 940, 943 (9th Cir. 2008); *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997); *Glass*, 33 F.3d at 1345. We see no reason to disturb our precedent in *Postma* or to break from the consensus among the circuits.

Wong also argues on appeal that we should reverse summary judgment for a more basic, case-specific reason. She argues that Cehovic-Dixneuf simply failed to come forward with proper, admissible evidence to establish that the supplemental life insurance policy was covered by ERISA. This argument requires us to examine how the parties litigated the case in the district court and how district courts manage summary judgment practice, particularly with respect to the presentation of evidence for purposes of summary judgment.

Cehovic-Dixneuf moved for summary judgment on the ground that ERISA mandated that she receive the funds under the policy. In support of her motion, Cehovic-Dixneuf provided the summary plan description, as well as the unsworn admissions by insurer ReliaStar in its own pleadings. In her appellate briefing, Wong argues that Cehovic-Dixneuf failed to submit admissible evidence to support her motion. She asserts that ReliaStar's assertions in its pleadings are hearsay if offered against Wong to prove their truth. Also, Cehovic-Dixneuf did not present an affidavit from ReliaStar attesting to truth of those assertions. Even the summary plan description, which was the centerpiece of Cehovic-Dixneuf's

motion, was not submitted with an affidavit properly authenticating it.

In response to the motion for summary judgment, Wong did not submit evidence of her own. Nor did she challenge in any way the admissibility of Cehovic-Dixneuf's evidence. Instead, Wong disputed Cehovic-Dixneuf's assertions of facts by trying to re-characterize the import of the ReliaStar materials and by arguing that the life insurance company's admissions could not bind Wong. Based on the arguments presented on the motion for summary judgment, the district court correctly granted summary judgment for Cehovic-Dixneuf, as we explained above.

To be clear, if Wong had raised her hearsay and authenticity objections in response to the original motion, her arguments might well have had merit. At the same time, we expect it would not have been difficult for Cehovic-Dixneuf to fix those problems with a supplemental affidavit or two. On appeal, Wong has not argued that Cehovic-Dixneuf's factual assertions are wrong, but only that they were not supported properly.

Looking generally at how summary judgment practice works, as the moving party, Cehovic-Dixneuf could support her assertions of undisputed facts using a variety of materials, including depositions, affidavits, and other documents in the record. Fed. R. Civ. P. 56(c)(1)(A). Still, the materials presented should be admissible in evidence or point to evidence that would be admissible at trial (as affidavits may be used to provide testimony that would be admissible through oral testimony at trial). See Fed. R. Civ. P. 56(c)(4) (affidavits or declarations "must be made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affi-
ant or declarant is competent to testify on the matters stated");
see, e.g., *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016);
*Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d
610, 613 (7th Cir. 2002); *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir.
1996).    In the briefing on a motion for summary judgment,
either side may object that the other's evidence "cannot be
presented in a form that would be admissible in evidence."
Fed. R. Civ. P. 56(c)(2).

Those are the key elements of the legal framework for
summary judgment evidence. But we also have to keep in
mind the adversarial process, which district courts can and do
rely on to identify disputed issues in summary judgment
practice as in other aspects of litigation. It is not unusual for
parties to submit documentary evidence to support or oppose
summary judgment, as happened here, without fully authen-
ticating the documents with affidavits thorough enough to
overcome any and all evidentiary objections that could be
raised. *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017)
("Evidence offered at summary judgment must be admissible
to the same extent as at trial, *at least if the opposing party objects*,
except that testimony can be presented in the form of affida-
vits or transcripts of sworn testimony rather than in person.")
(emphasis added); *Fenje v. Feld*, 301 F. Supp. 2d 781, 811 (N.D.
Ill. 2003); *Elghanmi v. Franklin College of Indiana, Inc.*, No. IP 99-
879-C, 2000 WL 1707934 at *1 (S.D. Ind. Oct. 2, 2000).

When that happens—when one side fails to cross all evi-
dentiary t's and dot all procedural i's—it is also not unusual
for opposing lawyers to choose to overlook available eviden-
tiary or other procedural objections. Lawyers should know
their cases. Courts are entitled to rely on lawyers to decide

which potential objections are worth raising and which are not. This is especially so when many such defects in summary judgment evidence could be cured quickly with a supplemental affidavit or two. Neither the rules of evidence nor the rules of civil procedure require lawyers or judges to raise all available evidentiary objections.

If Wong had raised in the district court the evidentiary arguments she makes on appeal, perhaps she might have had some success, at least temporarily, or perhaps Cehovic-Dixneuf might have responded with a supplemental affidavit or two to cure the problems. Wong did not do that. She never denied the truth or admissibility of the documents showing the supplemental life insurance policy was a component of the group health plan offered to Georges and his fellow employees. She simply disputed, without evidence of her own, Cehovic-Dixneuf's legal arguments about the significance of the plan documents and other facts.

After the district court granted summary judgment for Cehovic-Dixneuf, Wong filed a motion for reconsideration raising for the first time the evidentiary objections she pursues on appeal. The district judge properly treated the motion as one to alter or amend the judgment under Rule 59(e) and denied the motion. See *Lardas v. Grcic*, 847 F.3d 561, 566 (7th Cir. 2017). Until Wong filed that motion, the district judge had no notice that she believed Cehovic-Dixneuf's summary judgment materials posed any evidentiary problems. All the district judge knew based on Wong's response to Cehovic-Dixneuf's statement of facts was that Wong disagreed with the legal import of those facts.

Rule 59(e) did not give Wong a right to avoid forfeiture of her evidentiary arguments by failing to raise them before the

court's original ruling on the merits of the motion. District courts need not grant Rule 59(e) motions "to advance arguments or theories that could and should have been made before the district court rendered a judgment." *Miller v. Safeco Ins. Co. of America*, 683 F.3d 805, 813 (7th Cir. 2012), quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). That rule makes especially good sense in this context, where the potential evidentiary defects on summary judgment often can be cured easily. Because Wong failed to make her evidentiary arguments before the district court made its decision to grant summary judgment, she forfeited those arguments.

We see no abuse of discretion by the district judge in denying the Rule 59(e) motion. In denying a motion to reconsider a summary judgment opinion, in a passage quoted by other courts literally hundreds of times, the late Judge Shadur wrote thirty years ago that "this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (denying motion to reconsider certain conclusions in summary judgment decision); see also, e.g., *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'"), quoting *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 846 F. Supp. 677, 685 (N.D. Ill. 1994); *Fast Tek Group, LLC v. Plastech Engineered Products, Inc.*, No. 1:05-cv-1868, 2006 WL 3409171, *5 (S.D. Ind. Nov. 27, 2006) (denying motion to reconsider grant of summary judgment relying on new arguments and new evidence); *Pickett v. Prince*, 5 F. Supp. 2d 595, 596–97 (N.D. Ill. 1998) (collecting cases and denying motion

to reconsider grant of summary judgment based on argument not raised in original briefing). Having decided the motion before it correctly, on the briefs and record before it, the district court was not required to vacate that decision to allow Wong to start all over again on the basis of arguments she could and should have made earlier.

The judgment of the district court is

AFFIRMED.