**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MITCHELL SGRO,
　　　　　　*Plaintiff-Appellant,*

　　　　　　v.

DANONE WATERS OF NORTH
AMERICA, INC.; METROPOLITAN LIFE
INSURANCE COMPANY,
　　　　　　*Defendants-Appellees.*

No. 06-55916

D.C. No.
CV-05-05110-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
February 6, 2008—Pasadena, California

Filed July 2, 2008

Before: Alex Kozinski, Chief Judge,
Diarmuid F. O'Scannlain and William A. Fletcher,
Circuit Judges.

Opinion by Chief Judge Kozinski

## COUNSEL

Gary S. Soter, Clifford H. Pearson and Daniel L. Warshaw, Pearson, Soter, Warshaw & Penny, LLP, Sherman Oaks, California, for the plaintiff-appellant.

Gail E. Cohen, Andrew S. Williams and Misty A. Murray, Barger & Wolen LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

KOZINSKI, Chief Judge:

We consider a variety of procedural issues that relate to Employee Retirement Income Security Act (ERISA) claims, including whether an ERISA plan must reimburse its beneficiaries for the cost of photocopying medical records.

### Facts

Mitchell Sgro worked for defendant Danone Waters until he became disabled, at which point he applied for disability benefits from MetLife, the company that makes benefits determinations for Danone Waters's ERISA plan. But, according to Sgro, MetLife refused to consider his claim because he didn't provide copies of his medical records. Sgro objected to paying for photocopying the records and demanded that MetLife do so, but MetLife refused. Sgro eventually paid $412 for the copies, and MetLife thereupon considered and denied his claim. Sgro then asked for copies of all of MetLife's documents pertaining to his claim. MetLife

complied with this request in part, but Sgro claims the company held back the notes kept by its claims personnel.

Sgro sued MetLife and Danone Waters in federal court, seeking unpaid benefits, reimbursement of his copying costs, an injunction ordering defendants to pay such costs in the future and statutory penalties for defendants' failure to turn over the notes kept by MetLife's personnel. Sgro asserted causes of action under state and federal law. The district court dismissed his state-law claims with prejudice, and his federal claims without prejudice. The parties have since settled Sgro's claim for unpaid disability benefits, but Sgro appeals the dismissal of his other claims.

## Analysis

[1] 1.   Sgro claims that Danone Waters's disability benefits plan isn't governed by ERISA because it falls within the "safe harbor" created by 29 C.F.R. § 2510.3-1(j). For Sgro to prevail on this point, he would have to prove that the plan meets four separate requirements of the regulation, including that the employer make "[n]o contributions" to the plan. *Id.* § 2510.3-1(j)(1).[1] Sgro does allege that Danone Waters pays

---

[1]Defendants point out that the plan documents refute Sgro's claim; if the documents are correct, then the plan doesn't meet some of the regulation's requirements. We're allowed to consider the plan documents, even on a motion to dismiss, because Sgro refers to them in his complaint. *Branch* v. *Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith* v. *County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). However, where the parties disagree as to whether the plan documents accurately reflect the terms of the plan as it was actually implemented, consideration of such documents does not resolve the relevant issues in the context of a motion to dismiss. *See Zavora* v. *Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1122 (9th Cir. 1998) (whether a plan is governed by ERISA is a question for the trier of fact). Sgro here alleges that the plan documents do not accurately reflect the plan as implemented as to all but the regulation's requirement that Danone Waters make "[n]o contributions" to the plan. For purposes of the motion to dismiss, we have to assume that Sgro is right about this.

none of the plan's supplemental "buy-up" benefits, which employees may purchase to augment the "core" benefits. But, even if true, this wouldn't bring the plan within the safe harbor. So long as Danone Waters pays for *some* benefits, ERISA applies to the whole plan, even if employees pay entirely for other benefits. *See Glass* v. *United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994); *see also Crull* v. *GEM Ins. Co.*, 58 F.3d 1386, 1390 (9th Cir. 1995) ("[A]n employer's payment of a portion of the insurance premium [is] a significant factor for determining the existence of an ERISA plan.").

**[2]** We therefore affirm the district court's dismissal of Sgro's state-law claims. But the district court abused its discretion when it dismissed these claims with prejudice. On remand, Sgro may amend his complaint; if he is able to allege in good faith that Danone Waters pays nothing, he would then be entitled to discovery as to whether the safe harbor applies. If the trier of fact ultimately determines that the plan isn't governed by ERISA, then the district court must reconsider Sgro's state-law claims.

**[3] 2.** Sgro claims that a California insurance regulation requires defendants to reimburse him for the cost of copying the medical records that MetLife requested. Cal. Code Regs. tit. 10, § 2695.11(g) (implementing Cal. Ins. Code § 10123.131). But if the plan is governed by ERISA, then section 1144 of that statute preempts the California regulation. Section 1144 preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a), unless those laws "regulate[ ] insurance," *id.* § 1144(b)(2)(A). There's no dispute that the California regulation does "relate" to this "employee benefit plan." The closer question is whether the regulation is saved from preemption because it "regulates insurance."

**[4]** In *Kentucky Association of Health Plans, Inc.* v. *Miller*, 538 U.S. 329 (2003), the Supreme Court held that a state law

"regulates insurance"—and is therefore saved from ERISA preemption under section 1144—if the law is "specifically directed toward" the insurance industry and "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Id.* at 342.[2] The California regulation certainly meets the first part of this test because it is "specifically directed toward" the insurance industry; by its very terms the regulation pertains only to "insurers."

**[5]** The more difficult issue is whether the California regulation also "substantially affect[s] the risk pooling arrangement between the insurer and the insured." We conclude it does not. The regulation doesn't require insurers to insure against additional risks. *Cf. Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724, 730, 758 (1985) (state law that requires health insurers to insure against mental health problems "regulates insurance"). Nor does the regulation require insurers to offer their insureds additional benefits in the event that the insureds take ill. *Cf. Kentucky Ass'n*, 538 U.S. at 338 (state law that requires health insurers to permit their insureds to see "any willing provider" in the state "regulates insurance"). Nor does the regulation substantially affect the likelihood that a disputed claim will ultimately be deemed valid. *Cf. Rush Prudential HMO, Inc.* v. *Moran*, 536 U.S. 355, 361 (2002) (state law requiring HMOs to offer participants the option of having an independent physician review a denial of coverage "regulates insurance"); *UNUM Life Ins. Co. of Am.* v. *Ward*, 526 U.S. 358, 364 (1999) (state law requiring insurers to accept late-filed claims unless the delay prejudiced them "regulates insurance").

**[6]** There is one way that the California regulation could

---

[2]The parties rely on older Supreme Court cases that apply interpretations of the McCarran-Ferguson Act. But the *Kentucky Association* Court expressly disapproved any reliance on the McCarran-Ferguson criteria, so we do not consider them. *Kentucky Ass'n*, 538 U.S. at 341 (making a "clean break from the McCarran-Ferguson factors").

affect insurers' risks: By requiring insurers to pay copying costs, the regulation does make it slightly easier for insureds to file claims. If that causes more insureds to file claims, and if some of those additional claims are meritorious, then the regulation will cause insurers to pay more benefits than they otherwise would absent the regulation. But this possibility is too remote and speculative to "substantially" affect the risk pooling arrangement between insurers and their insureds. *Kentucky Ass'n*, 538 U.S. at 342. Few, if any, claimants will forgo a meritorious claim because of the relatively small expense of copying—so few, in fact, that they are unlikely to substantially affect the risk pool.

**[7] 3.**    Sgro also claims that defendants violated ERISA's regulation on "claims procedures," 29 C.F.R. § 2560.503-1. If the plan is governed by ERISA, *see* p. 8057 *supra*, the regulation forbids defendants from "unduly inhibit[ing] or hamper-[ing]" beneficiaries from claiming benefits. *Id.* § 2560.503-1(b)(3). In particular, the regulation forbids defendants from "requir[ing] payment of a fee or costs as a condition to making a claim." *Id.*

**[8]** But Sgro's copying expenses weren't a "condition" of making his claim. The plan merely required Sgro to provide documentation, which is quite different from "condition[ing]" his application on a payment. A "condition" is something that's required of every application; the cost of providing documents, by contrast, depends on decisions made by the beneficiary and could be zero in some cases. For example, if Sgro had copies of the documents on hand at the time he applied for benefits, he could have submitted those copies; or, if his doctors were willing to make copies for him for free, he could have submitted those. In either case, he would have avoided any additional cost. So photocopying costs weren't a "condition" for Sgro to make a claim.

**[9]** Sgro's reading of the regulation would require plan administrators to pay for a number of other expenses that are

typically borne by beneficiaries. To apply for benefits, a claimant must spend time putting together his application or pay someone else to do so; he may require additional medical tests; if he doesn't speak English, he'll need a translator; he may need postage to mail in his application. All these are costs incurred in claiming benefits, but none is a "condition" of making a claim. Nothing in this regulation forbids defendants from requiring Sgro to provide, at his own expense, the documents needed to prove his disability. We therefore affirm the dismissal of Sgro's claim that defendants violated this regulation.

**[10] 4.** Sgro also claims that he asked defendants for a "complete copy of [his] claim file" and that defendants didn't fully comply with the request. In particular, Sgro alleges that MetLife held back "claim activity records or investigation notes" kept by MetLife's "claims personnel." Sgro argues that MetLife's failure to provide these documents violated ERISA regulations, which require that

> a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

29 C.F.R. § 2560.503-1(h)(2)(iii). The documents that MetLife is alleged to have held back are "relevant," and thus covered by this regulation, because they were "generated in the course of making the benefit determination." *Id.* § 2560.503-1(m)(8)(ii). ERISA's remedies provision gives Sgro a cause of action to sue a plan "administrator" who doesn't comply with a "request for . . . information." 29 U.S.C. § 1132(c)(1).

**[11]** But there are two defendants here, and Sgro's complaint doesn't say which one he asked for the records. *See* First Amend. Compl. ¶ 24. That matters because a defendant can't be liable unless it received a request. *See* 29 U.S.C.

§ 1132(c)(1). As for Danone Waters, Sgro's lawyer told the district court that he requested the records from that company but that his letter came back to him stamped "undeliverable as addressed." It's not at all clear whose fault that was. So it seems possible for Sgro to amend his complaint to state a claim against Danone Waters. On remand, Sgro shall be given leave to amend his complaint to allege that he requested these documents from Danone Waters, if he can do so in good faith.

**[12]** As for Danone Waters's co-defendant, MetLife, the district court properly dismissed the claim. Even if Sgro did ask MetLife for the records, that company can't be liable under section 1132(c)(1). That section only gives Sgro a remedy against the plan "administrator," and MetLife isn't the plan administrator—Danone Waters is. This is our court's longstanding interpretation of section 1132(c)(1), which we first set out in *Moran* v. *Aetna Life Insurance Co.*, 872 F.2d 296, 299-300 (9th Cir. 1989).

**[13]** The federal regulation was amended after we decided *Moran*, and Sgro argues that the amendments overruled *Moran*'s interpretation of section 1132(c)(1). *See Nat'l Cable & Telecomm. Ass'n* v. *Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). But nothing in the amendments to the regulation broadened the meaning of the word "administrator" in section 1132(c)(1) to include additional parties. The amendments merely broadened administrators' duties: Administrators must now turn over, on request, the documents "generated in the course of making the benefit determination." *See* 65 Fed. Reg. 70246, 70271 (Nov. 21, 2000). Where, as here, a third party makes the benefit determination, the administrator may not have the needed documents on hand, so it will have to get them from the third party. But nothing in the amendments purports to make that third party directly liable to beneficiaries as if it were itself an "administrator." We therefore remain bound by *Moran*: Sgro can only sue the plan's "administrator," Danone Waters. The contrary holding of *DeLeon*

v. *Bristol-Myers Squibb Co. Long Term Disability Plan*, 203 F. Supp. 2d 1181, 1194-96 (D. Or. 2002), is overruled.

**5.** Sgro seeks to represent a class of similarly situated beneficiaries and asks for an injunction requiring defendants to pay the class's copying expenses. But, as described above, Sgro hasn't alleged facts that remove the plan from ERISA pursuant to the safe harbor, *see* pp. 8057-58 *supra*, and ERISA doesn't require defendants to pay copying costs, *see* pp. 8060-61 *supra*. Sgro therefore isn't entitled to a class certification hearing or to an injunction. If, on remand, the district court determines that the plan isn't governed by ERISA, then it will have to reconsider these questions.

\*    \*    \*

We affirm the dismissal of Sgro's claim that defendants violated 29 C.F.R. § 2560.503-1, and the dismissal of Sgro's claim against MetLife under section 1132(c)(1) for failing to turn over the documents he requested. We also affirm the dismissal without prejudice of Sgro's section 1132(c)(1) claim against Danone Waters. We affirm the dismissal of Sgro's state-law claims, but vacate the dismissal with prejudice. We remand for proceedings consistent with this opinion. All outstanding motions are denied as moot.

**AFFIRMED in part, VACATED in part and REMANDED. No costs.**