**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR   THE THIRD CIRCUIT

_____

No. 15-1914

_____

MARVA JANE RICHARDSON-ROY,

Appellant,

v.

ABIGAIL JOHNSON, President; FIDELITY
INVESTMENTS; QDRO ADMINISTRATION GROUP,
a fiduciary agent for General Motors Corporation;
MARY T. BARRA, CEO; MELISSA CHOUINARD;
DOE INDIVIDUALS; GENERAL MOTORS
LLC f/k/a GENERAL MOTORS CORPORATION

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-14-cv-00371)
District Judge: Honorable Richard G. Andrews

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 6, 2015

Before:  GREENAWAY, JR., GARTH and RENDELL, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 2, 2016)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Marva Jane Richardson-Roy appeals from an order of the District Court granting summary judgment to the defendant. For the reasons that follow, we will affirm.

On March 10, 1994, Richardson-Roy and her husband Howard divorced after 33 years of marriage. At the time of the divorce, Howard was employed by General Motors Corporation ("GM"). Howard retired four years later, and elected to begin pension benefits, effective August 1, 1998, under the GM Hourly-Rate Employees Pension Plan ("the Plan"), with survivor spouse coverage for his then-wife, Cheryl L. Richardson. Howard died on January 4, 2010. Cheryl's surviving spouse benefits began the following month.

On March 16, 2010, two months after Howard died, Richardson-Roy obtained a "Qualified Domestic Relations Order" ("QDRO") from the Family Court in New Castle County, Delaware. The QDRO identified her as Howard's former spouse and "alternate payee" and granted her a "separate interest" award.[1] Richardson submitted the QDRO to the Plan Administrator for review and qualification. GM had delegated authority to Fidelity Workplace Services LLC to determine whether domestic relation orders relating to the Plan are actually qualified. On April 21, 2010, Fidelity advised Richardson-Roy in writing that it had determined that the QDRO could not be qualified. The letter explained that Howard's benefit had terminated with his death and the post-retirement survivor annuity that had vested in Cheryl Richardson could not be reassigned.

---

[1] Separate interest awards are designed to pay benefits to the ex-spouse for the duration of the ex-spouse's life, even if the participant predeceases the ex-spouse.

Richardson-Roy sought reconsideration twice of Fidelity's decision, arguing that the QDRO created a right to a divided share of Howard's benefit and that it was immaterial that he had remarried, elected joint and survivor benefits in favor of Cheryl, and then died. On June 1, 2010, Fidelity replied for the third time, explaining again that Howard's benefit could not be divided and assigned pursuant to the QDRO because his benefit interest terminated with his death. Fidelity stated that it had confirmed with GM that there was no record of a prior domestic relations order that would evidence an intent to assign Howard's pension benefit interest to Richardson-Roy before that interest was terminated. Fidelity advised Richardson-Roy that if she had correspondence to the contrary to forward it at her earliest convenience.

Nothing further happened for more than two years. In January, 2013, Richardson-Roy renewed her correspondence with Fidelity and argued that the QDRO was a "property settlement" that was not about death or survivor benefits. Fidelity responded on January 17, 2013, stating that there was no QDRO on file with the Plan at the time of Howard's death; that Howard's benefit rights ceased with his death; and that, although the Plan did provide a survivor benefit, that benefit was vested in Cheryl, and there were no further benefits to be paid.

On March 24, 2014, almost four years after Fidelity's original decision and more than one year after the last correspondence from Fidelity, Richardson-Roy filed a pro se civil action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., in the United States District Court of the District of Delaware. GM moved for summary judgment, submitting the Plan and the QDRO as

3

exhibits to the motion, and arguing that Richardson-Roy's benefits claim was time-barred and meritless, and that ERISA preempts claims for non-benefit remedies.[2] Richardson-Roy submitted written opposition. After the matter was fully briefed, the District Court, in an order entered on April 1, 2015, granted summary judgment to GM.

Richardson-Roy appeals. We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment de novo. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is proper where the summary judgment record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).

We will affirm. In granting summary judgment to GM, the District Court properly held that Richardson-Roy's ERISA claim was not timely filed and properly rejected her argument that there is no statute of limitations applicable to her claim. The ERISA statute does not have its own statute of limitations for recovery of benefits, but federal courts are authorized to borrow the most analogous limitations period from the forum state when deciding whether a federal claim has been timely pursued. Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 462 (1975). The one-year limitation period set forth under Delaware law for employment disputes, 10 Del. Code § 8111, is applicable to a claim for recovery of benefits under an ERISA plan. Syed v. Hercules, Inc., 214 F.3d 155, 159-61 (3d Cir. 2000) ("[W]e recognize that the one-year statute of limitations of §

---

[2] GM alone is the true defendant and thus the District Court properly dismissed all other parties.

8111 is short, but we cannot say that it is inconsistent with the policy of ERISA.").[3]

Section 8111 applies here. Richardson-Roy's claim accrued either on April 21, 2010 when Fidelity first rejected it, or on May 4, 2010 or June 1, 2010, when Fidelity denied her contemporaneous requests for reconsideration. Richardson-Roy had one year from the date that her claim accrued, pursuant to § 8111, in which to file a timely ERISA lawsuit. The instant action was not filed until March 24, 2014, almost three years after the likely deadline for suit. Even if we were to hold that her claim accrued on January 17, 2013, the date of Fidelity's last letter reiterating that her claim was denied, her civil action would still be untimely by more than two months.

In the margin, the District Court held in the alternative that summary judgment was warranted because there was no merit to Richardson-Roy's ERISA claim. We agree. A QDRO is an order that "creates or recognizes the existence of an alternative payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan…. 29 U.S.C. § 1056(d)(3)(B)(i). The "alternate payee" can be a "spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a

---

[3] The statute provides:

> No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of 1 year from the accruing of the cause of action on which such action is based.

10 Del. Code § 8111.

5

right to receive all, or a portion of, the benefits payable under a plan with respect to such participant. 29 U.S.C. § 1056(d)(3)(K). But, although a state court might caption its order as "qualified," plan administrators determine, in the first instance, whether a domestic relations order is, in fact, qualified. 29 U.S.C. § 1056(d)(3)(G)(i). A domestic relations order can be qualified only if such order "does not require the plan to provide any type or form of benefit, any option, not otherwise provided under the plan." 29 U.S.C. § 1056(d)(3)(D)(i). We note also that Richardson-Roy's QDRO provided that, in the event of a conflict between the terms of the QDRO and the Plan, the terms of the Plan would prevail.

When Howard retired in 1998, he elected a joint and survivor annuity with surviving spouse coverage in favor of his then-wife Cheryl. Howard received his joint and survivor annuity for 12 years, and then his own lifetime benefit interest terminated with his death in January, 2010. After his death, only the post-retirement survivor annuity in favor of Cheryl remained, and her right to the survivor's benefits vested upon Howard's retirement and could no longer be alienated. See Samaroo v. Samaroo, 193 F.3d 185, 190 (3d Cir. 1999) (citing Hopkins v. AT & T Global Information Solutions Co., 105 F.3d 153, 156-57 (4th Cir.1997)). Richardson-Roy waited until after Howard's lifetime interest had already expired due to death before she first sought an assignment of such interest, but, by then, there was nothing left to assign. The Plan Administrator thus properly determined that the QDRO could not, in fact, be qualified.

Last, Richardson-Roy alleged malfeasance by GM and sought punitive damages, as well as other unnamed sanctions. The District Court held, and we agree, that

6

Richardson-Roy may not recover under her theories or allegations seeking punitive damages, sanctions and other penalties because these things are preempted by ERISA. 29 U.S.C. § 1144(a). ERISA's remedial scheme is exclusive and it preempts all conflicting claims and remedies, including claims for punitive relief. Menkes v. Prudential Ins. Co. of America, 762 F.3d 285, 296 (3d Cir. 2014) ("The plaintiffs' claim for punitive damages is conflict preempted by ERISA's exclusive civil remedy scheme…."). In any event, the matter appears to have been under Richardson-Roy's control; had she obtained the QDRO a few months earlier, that is, before Howard's death, it appears that she would have been entitled to benefits.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment to GM and dismissing the remaining defendants.