In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-3270

ROBBIE L. MARSHALL,

*Plaintiff-Appellant,*

*v.*

INDIANA DEPARTMENT OF
CORRECTION,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:18-CV-261 RLM-MJD — **Robert L. Miller, Jr.**, *Judge.*[1]

_____

ARGUED MAY 28, 2020 — DECIDED SEPTEMBER 4, 2020

_____

Before MANION, KANNE, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Robbie Marshall claims his former
employer, the Indiana Department of Correction,
discriminated against him because of his sexual orientation

_____

[1] Sitting by designation.

and retaliated against him. The district court granted summary judgment to the DOC. We affirm.

I.

Marshall worked at the DOC for over 20 years. He received good reviews and promotions. He identified as homosexual. He reached the rank of Internal Affairs Investigator 2 at the Wabash Valley Correctional Facility.

In 2015, he was arrested for operating a vehicle while intoxicated. Warden Richard Brown disciplined him with a written reprimand.

In September 2016, he attended a law enforcement conference in Indianapolis. A sheriff from another county complained that Marshall became intoxicated at the conference and behaved inappropriately. Marshall denies intoxication or inappropriate behavior at the conference.

Later that month, Marshall and others confronted Robert Storm—a subordinate directly under Marshall's supervision—about Storm's unethical disclosure of confidential investigation materials.[2]

The next day, Storm accused Marshall of sexually harassing him twice: once in January 2015 at an American Legion club, and once in April 2015 at a casino in French Lick.

---

[2] Here are the details. Storm was an investigator who usually submitted poorly written reports. But suddenly, his reports improved dramatically. Marshall suspected someone new wrote them. He checked Storm's emails and discovered Storm was drafting reports and sending them to his wife in breach of confidentiality. She edited the drafts, significantly improving them, and returned them to him. Then Storm submitted the sanitized reports.

Warden Brown called upon the State Personnel Department to investigate Storm's sexual-harassment allegations against Marshall. Ultimately, Regional Director Michael Osburn decided to terminate Marshall. At a meeting of Osburn and others one day before the termination, someone said the DOC should be prepared for Marshall to file a complaint with the EEOC that he was fired because of his sexual orientation.

Osburn terminated Marshall and demoted Storm in October 2016. Marshall exhausted his administrative remedies. He then brought many claims to the district court. The only claims before us are the claims for sexual-orientation discrimination and for retaliation. The district judge granted summary judgment to the DOC on these claims, and Marshall appeals.

## II.

### A. Law

We review *de novo*. A party is entitled to summary judgment if there is no genuine issue of material fact and he is entitled to judgment as a matter of law. We construe the facts and draw all reasonable inferences in Marshall's favor.

In *Hively*, the Seventh Circuit extended Title VII to include sexual-orientation discrimination. *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 341 (7th Cir. 2017). Recently, in *Bostock*, the Supreme Court did the same. *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731 (2020). According to the Supreme Court, Title VII prohibits employers from firing an employee on the basis of sexual orientation. *Id.* at 1737.

Marshall brings two Title VII claims before us on appeal: discrimination and retaliation.

B. Discrimination claim

For his discrimination claim to survive summary judgment, Marshall must point to evidence sufficient to permit a reasonable factfinder to conclude that his sexual orientation caused the termination. The district judge addressed Marshall's assertion that he established a *prima facie* case under the *McDonnell Douglas* burden-shifting framework. The judge also kept in mind *Ortiz*'s admonition to consider all evidence in one pile.

To show a *prima facie* case of discrimination under the *McDonnell Douglas* format, Marshall had to show: 1) he belongs to a protected class; 2) he met the DOC's legitimate expectations; 3) he suffered an adverse employment action; and 4) another similarly situated employee who wasn't in the protected class was treated better by the DOC.

Then the burden of production would shift to the DOC to state a legitimate, non-discriminatory reason for the adverse employment action.

After that the burden would shift back to Marshall to present evidence that the stated reason is a pretext for discrimination. A pretext is a lie.

As the district judge noted, the parties do not dispute that Marshall belongs to a protected class because of his sexual orientation, and they do not dispute that he faced an adverse employment action: termination.

But the parties dispute whether Marshall was meeting the DOC's legitimate expectations. The district judge did not resolve this issue, and instead concluded that even if Marshall were meeting the DOC's legitimate expectations, he has

not shown that similarly situated employees who did not identify as homosexual were treated better than he was.

We agree with the district judge that Marshall's case falters for lack of a similarly situated comparator. Storm is not similarly situated because his alleged breach of confidentiality is not similar to Marshall's alleged sexual harassment. For several reasons, two other proposed comparators also are not similarly situated to Marshall, even though they allegedly committed sexual harassment.

First, the two other proposed comparators did not have the same level and type of authority over their victims that Marshall had over Storm. Marshall argues that at least one of these proposed comparators *did* have supervisory authority over his victims. He was training them. But the record shows this authority was distinguishable from the level and type of authority Marshall had over Storm.

Second, these proposed comparators were disciplined by Brown and not by Osburn. Marshall argues Brown should have been the decision-maker in Marshall's case but was not allowed to be because Brown also identifies as homosexual. But the record contradicts this. There was at least a potential conflict of interest precluding Brown from being the decision-maker in Marshall's case. Marshall and Brown were old friends. Also, Brown witnessed Marshall's efforts to investigate Storm for breaching confidentiality. As Brown explained in an affidavit: "I was not involved in the decision-making process for Marshall's dismissal. I was informed my lack of involvement was due to my participation in the investigation as a witness."

And third, these proposed comparators do not have the same sort of prior disciplinary record Marshall has. This is the most definitive distinction between these proposed comparators and Marshall. There is no record that they had a disciplinary past similar to Marshall's. Marshall had two alcohol-involved incidents on his record: driving while intoxicated and the ensuing arrest in 2015, and conduct unbecoming staff at the law-enforcement conference in 2016.

So we agree with the district judge that Marshall failed to show a similarly situated person outside the protected class was treated better than he was. He therefore failed to establish a *prima facie* case of discrimination to shift the burden.

The district judge also concluded that even if Marshall could establish a *prima facie* case, he could not show that the DOC's stated reasons for terminating him were pretextual. The DOC said it terminated him for continually violating its policies: 1) driving drunk and getting arrested in 2015;[3] 2) engaging in conduct unbecoming staff at the law-enforcement conference in 2016; and 3) sexually harassing Storm. Marshall cannot show this explanation is a lie. At most, he argued the investigations were sloppy. But that is not enough. We have long noted that challenges to the manners in which employees conduct these investigations are generally misspent. *See Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) ("Therefore, Kariotis' energy is misspent by attacking the company's decisional process, unless she could point to facts suggesting that the

---

[3] Sometimes the DOC seems to explain the 2015 incident as part of Marshall's disciplinary past and not as one of the immediate reasons for his termination. But any distinction on this point is immaterial here.

company investigated her differently because she was an older employee … .”). We are not a super-human-resources department, judging whether the investigation was exemplary.

Marshall does not dispute that he was disciplined for the alcohol-related arrest or that his drunk driving violated the standards of employee conduct. And he does not dispute that violations of the standards of conduct justify termination. He does dispute the allegations about the 2016 incident at the conference and Storm's allegations of sexual harassment. But the ultimate truth of those allegations is immaterial here because Marshall has pointed to no evidence that the DOC is lying about them, only that the DOC is wrong about them. That is not pretext.

Marshall must lose his discrimination claim because he cannot show the DOC terminated him because of his sexual orientation. He has no smoking gun.[4] He has no mass of circumstantial evidence pointing to discrimination. He cannot make out a *prima facie* case. And even if he could, he cannot show pretext. Considering all the evidence in a single *Ortiz* pile, we conclude Marshall cannot show sexual-orientation discrimination.

### C. Retaliation claim

The retaliation claim fares no better. To prevail, Marshall had to show: 1) he engaged in statutorily protected activity;

---

[4] He seems to think he might have a smoking gun because one of the investigators said he was no different from any other predator. But Marshall has advanced no reason to think this comment pertained to his sexual orientation.

2) he suffered an adverse employment action; and 3) there is a "but for" causal connection between 1 and 2.

His problem is he cannot show he engaged in statutorily protected activity. He makes much of the timing of his exposure of Storm's breach of confidentiality relative to Storm's report the next day of Marshall's sexual harassment a long while before. But Storm's "retaliation" against Marshall is not the sort of retaliation actionable here. Marshall's exposure of Storm's breach of confidentiality is *not* protected by Title VII. So retaliation for the exposure cannot be Title VII retaliation.

Marshall tries to argue that the termination was anticipatory retaliation for the EEOC complaint for sexual-orientation discrimination that the DOC suspected Marshall might file after the termination. We have recognized the viability of claims based on theories of anticipatory retaliation. *See Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) ("Such a threat would be a form of anticipatory retaliation, actionable as retaliation under Title VII."). But in this case, the claim borders on preposterous. Marshall would have us believe the termination was retaliation for the anticipated complaint about the termination, as though he were trapped with the DOC in a time loop.

Marshall bases this argument on the comment during the meeting that the DOC should be prepared for the possibility that he would complain the termination was sexual-orientation discrimination. But the record indicates the DOC had already decided to terminate Marshall before this comment was made. Someone in the room where it happened testified that the comment came after the termination decision had already been made. And Marshall does not serious-

ly challenge that fact. He argues the *actual* termination occurred after the comment. But this is neither controversial nor germane. The point is the record indicates the DOC *decided* to terminate Marshall, then someone made the comment about preparing for a complaint, and then the DOC terminated Marshall. So the comment does not help Marshall's case.[5]

And Marshall makes no allegation that Osburn planned to give him lesser discipline but then, in anticipation of future complaining to the EEOC, decided to terminate him. Marshall makes no allegation that Osburn or anyone else said anything like: "We should discipline him short of termination, but if we do he'll probably claim we discriminated against him, so we should just go ahead and fire him now." Nor does Marshall allege he received any adverse employment action short of termination. Moreover, as the district judge noted, termination of Marshall would increase the possibility he might file a charge against the DOC, so dismissal was not a logical strategy if the DOC wanted to avoid a charge. *See Beckel*, 301 F.3d at 624 ("Rather than deterring a reasonable person from suing, [a threat of termination] would increase her incentive to sue by giving her a second claim … .").

Title VII generally does not hold an employer accountable merely for discussing the potential ramifications of the action it already decided to take. Such a discussion generally does not transform a prior decision into

---

[5] Marshall advances no argument, much less evidence, that the comment about preparing reveals a mindset that influenced the preceding termination decision.

anticipatory retaliation against future protected action, even when the actual termination has not yet occurred. Marshall has shown no reason to hold the DOC liable merely for discussing the potential consequences of its decision to terminate him.

As Marshall cannot show any statutorily protected activity was the "but for" cause of the adverse employment action, his retaliation claim must fail.

We affirm.