In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 18-3351

DAVID IGASAKI,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-03693 — **Andrea R. Wood**, *Judge.*

---

ARGUED NOVEMBER 6, 2020 — DECIDED FEBRUARY 17, 2021

---

Before ROVNER, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* David Igasaki, a state government attorney, alleged race, sex, age, and disability discrimination and retaliation by his former employer, the Illinois Department of Financial and Professional Regulation. On each claim, the district court granted summary judgment to the Department because Igasaki failed to provide sufficient evidence. We agree and affirm the district court's judgment.

# I

## A

Igasaki, a gay, Japanese-American man, suffers from gout. From January 1994 until his termination in March 2015, Igasaki, who was 62-years old at the time of his complaint, worked as a staff attorney in the Medical Prosecutions Unit of the Illinois Department of Financial and Professional Regulation. His responsibilities included preparing for disciplinary proceedings, participating in settlement conferences, and litigating cases at administrative hearings. As part of his employment, Igasaki received periodic performance reviews from his superiors.

In February 2011, Laura Forester became the Department's Chief of Medical Prosecutions and thus responsible for Igasaki's performance reviews. Forester gave Igasaki a good performance review in 2011 and rated him as either exceeding or meeting expectations in all categories. But in 2012, Forester rated Igasaki poorly, describing him as requiring improvement in "job knowledge," "productivity," "quality," "initiative," "use of time," "planning," and "follow-up." Forester also provided specific examples of Igasaki's deficient performance, including that he could not be located during work hours and his work product was poor. This began three years of Igasaki receiving poor performance reviews.

In February 2013, the Department placed Igasaki on a six-month corrective action plan as a result of his 2012 performance review. That plan included twelve requirements for improvement and warned that failure to adhere to these requirements could result in discipline. In August 2013, the Department renewed Igasaki's correction action plan for six

months. Later that month, Igasaki received an oral reprimand for "unsatisfactory performance" and "incompetence or inefficiency in the performance of an assigned duty." He then received a written reprimand for incompetence and inefficiency in December 2013. In Igasaki's 2013 performance review, Forester again rated him poorly and noted that he had fallen asleep during a meeting.

Igasaki fared no better in 2014. In February of that year, the Department renewed Igasaki's corrective action plan for another six months. Igasaki made limited progress on seven of the twelve requirements, but five requirements remained unfulfilled. His corrective action plan listed specific examples of deficiencies: failure to meet 50 deadlines from August 2013 to February 2014; continued sleeping while at work; a disorganized cubicle that led to problems finding files; and a lack of preparation for administrative proceedings. In June 2014, the Department placed Igasaki on a ten-day suspension for incompetence and inefficiency.

In September 2014, the Department yet again renewed Igasaki's corrective action plan with the same twelve improvement requirements, but this time only for five months. That October, Igasaki received another ten-day suspension for insubordination. In Igasaki's 2014 performance review, Forester rated him as needing improvement in all categories, explaining among other things that he demonstrated a lack of knowledge on how to acquire experts, produced low-quality complaints, and continued to fall asleep during work hours. In January 2015, Forester provided feedback on Igasaki's corrective action plan and noted that he had not progressed on six of the twelve requirements.

That same month, for the first time, Igasaki formally requested accommodation for his gout. As a result of that condition, coworkers had begun pushing Igasaki around the office in a mobile office chair more than three years earlier. When Forester witnessed this firsthand, she informed Igasaki that he could request reasonable accommodation if he needed it. Igasaki took nearly four years to make that request. After finally doing so in January 2015, Igasaki requested an ergonomic keyboard and flexible deadlines. The Department granted Igasaki an ergonomic keyboard, a tape recorder, and authorization for an administrative assistant to type up his written work product. Igasaki's request for flexible deadlines was not supported by a doctor's note, so the Department denied that request.

Instead of renewing Igasaki's corrective action plan for a fifth time, the Department terminated him in March 2015. Before his termination, however, Igasaki filed a discrimination charge against the Department with both the Illinois Department of Human Rights in September 2014 and the Equal Employment Opportunity Commission ("EEOC") in January 2015.

**B**

Igasaki eventually sued the Department over his termination. In his amended complaint, Igasaki alleged five claims: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, arising from the Department's treatment of his job performance and termination; (2) sex discrimination in violation of Title VII, arising from gender stereotyping and a hostile work environment based on his homosexuality; (3) age discrimination in violation of the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 623 *et seq.*, arising from the Department's treatment of his job performance and termination; (4) retaliation in violation of Title VII, arising from his termination after his EEOC charge; and (5) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, arising from the Department's failure to accommodate his gout disability. The Department moved for summary judgment on all claims after the close of discovery.[1]

Before addressing the merits, the district court held that Igasaki violated Federal Rule of Civil Procedure 56 and Northern District of Illinois Local Rule 56.1, which govern summary judgment. The district court concluded that Igasaki failed to properly respond to the Department's statement of material facts because his responses disputed the Department's factual assertions in name but not in substance. Where Igasaki "failed squarely to dispute an asserted fact," the district court treated that fact as admitted. Igasaki also mischaracterized evidence and offered only "speculation" so the district court admitted any facts rebutted by these methods. Perhaps most notably, Igasaki did not submit a statement of additional facts. Instead, he attempted to improperly introduce new facts in his responses to the Department's statement of material facts and in his brief opposing summary judgment. Although the district court struck any nonresponsive additional facts from Igasaki's responses, it considered those

---

[1] The Department asserts Igasaki forfeited our review of his sex stereotyping claim by failing to argue it at summary judgment and on appeal. To the extent Igasaki proceeds under that claim, it also fails.

facts from Igasaki's opposition brief that were "properly sup-ported" by the record.[2]

The district court granted summary judgment to the De-partment on all five claims. Igasaki's race and sex discrimina-tion claims under Title VII and his age discrimination claim under the ADEA failed for lack of a prima facie case. Specifi-cally, Igasaki did not identify any similarly situated employee who received more favorable treatment than he did. The dis-trict court added that the evidence, viewed in the light most favorable to Igasaki, did not reveal any prejudice against Asians, gay men, or older employees. Rather, the evidence showed that the Department had a nondiscriminatory reason for Igasaki's termination—his poor work performance. Igasaki's disability discrimination claim under the ADA was doomed by his failure to promptly request reasonable accom-modation for his gout in October 2011. Once he made a request, the Department sufficiently accommodated him, ac-cording to the district court. And as for Igasaki's retaliation claim under Title VII, the district court held that Igasaki of-fered no evidence of engagement in a statutorily protected ac-tivity because he submitted neither the Illinois Department of Human Rights charge nor the EEOC charge.[3] Even if Igasaki engaged in a statutorily protected activity, the district court concluded that he failed to demonstrate a causal connection

---

[2] The district court "exercise[d] its discretion to consider the addi-tional facts improperly presented in the opposition brief[,]" because "even considering those facts, Igasaki cannot prevail on any of his claims." R. 106, p. 5.

[3] It appears Igasaki presented evidence of his EEOC charge at sum-mary judgment, so we consider the merits of his retaliation claim.

beyond suspicious timing between those charges and his termination.

## II

On appeal, Igasaki contends the district court erred in dismissing his claims for race, sex, age, and disability discrimination, as well as his retaliation claim. For the first time, he also asserts the Department failed to proffer admissible evidence in support of its summary judgment motion. We review a district court's evidentiary decision for an abuse of discretion, *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020), and we review a district court's grant of summary judgment de novo. *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 946 (7th Cir. 2020).

We first address this evidentiary challenge and the district court's enforcement of its local rules. Then, we turn to Igasaki's discrimination and retaliation claims under Title VII, the ADEA, and the ADA.

## A

Igasaki challenges exhibits that the Department attached to its motion for summary judgment, most of which are performance evaluations, corrective action plans, and disciplinary documents. According to Igasaki, these documents violated Federal Rule of Evidence 803(6), the business record exception to hearsay. Igasaki alleges "Ms. Forester was dishonest when she created the documents" and that "in her Declaration[,] Ms. Forester does *not* assert that what she wrote in the employment documents was true." The Department responds Igasaki forfeited this argument and the district court properly considered these documents in any event.

Igasaki waived this evidentiary challenge. *See Henry v. Hulett*, 969 F.3d 769, 785 (7th Cir. 2020) (en banc) ("Because Defendants failed to raise their qualified immunity defense in their summary judgment motion before the district court, and instead raised it for the first time in their appellate brief, they have waived it for purposes of this appeal."). If Igasaki took issue with the Department's summary judgment exhibits, he "should have made a record of [his] objections at the district court and given the district court the opportunity to address the concern." *Chicago Studio Rental, Inc. v. Ill. Dep't of Commerce*, 940 F.3d 971, 981 (7th Cir. 2019) (footnote omitted). He did not. In fact, Igasaki relied upon some of the same documents in his district court briefing that he now seeks to exclude.

Igasaki's evidentiary challenge also fails on its merits. At summary judgment, the moving party can support its assertions of undisputed facts by citing to record materials, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(C)(1)(A); *see Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018). These record materials must still be admissible as evidence at trial, "although the form produced at summary judgment need not be admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). That is, "[i]f the evidence is inadmissible hearsay, the courts may not consider it." *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). But the Department's evidence at summary judgment was not inadmissible hearsay. Igasaki's performance evaluations, corrective action plans, and disciplinary documents are all business records. *See* FED. R. EVID. 803(6) (providing for the business records

exception to hearsay). These Department documents were created contemporaneously by someone with knowledge, kept in the course of the company's regular human resources operation, and constituted a regular practice of that human resources operation, satisfying that rule's requirements.

Igasaki's arguments to the contrary lack merit. First, Igasaki argues that Forester did not confirm the veracity of the challenged documents. In her declaration, though, Forester attested that each document was "a true and correct copy … kept in the ordinary course of business." Further, we presume the reliability of business records based on the lack of deceitful incentive and the habitual accuracy implicit within regularity. *Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013) ("Such records are presumed reliable because businesses depend on them to conduct their own affairs, so there is little if any incentive to be deceitful, and because the regularity of creating such records leads to habits of accuracy."). This presumption and Forester's declaration rebut Igasaki's contentions.

Second, Igasaki asserts these documents—mainly, his performance reviews—are inadmissible because they concern Forester's state of mind. He cites *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004), for the proposition that "[i]t is rarely appropriate on summary judgment for a district court to make a finding on state of mind." Although that principle makes sense, state-of-mind concerns arise when a party offers more than conjecture. Igasaki essentially accuses Forester of lying in both the performance reviews and her declaration, yet he fails to provide any evidence. "Conclusory allegations" like these "alone cannot defeat a motion for summary

judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892-93 (7th Cir. 2003). Igasaki's evidentiary challenge therefore fails.

We also reaffirm the district court's ability to enforce its local rules. *E.g.*, *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). As the district court ruled, Igasaki violated Northern District of Illinois' Local Rule 56.1(b) in at least four ways: by (1) failing to controvert the Department's factual assertions with specificity; (2) mischaracterizing record evidence via speculation; (3) declining to submit an additional statement of material facts; and (4) asserting new facts in his response to the Department's statement of material facts and his opposition brief.[4] The district court struck some of these improperly

---

[4] Northern District of Illinois Local Rule 56.1(b) requires, in relevant part, that the party opposing summary judgment file:

(1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); …

(3) a concise response to the movant's statement that shall contain: …

(B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the

asserted facts, but it considered others. The district court was well within its discretion to do so. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[I]t is clear that the decision whether to apply the [local] rule strictly or to overlook any transgression is one left to the district court's discretion."). As this court has said before, a district court may strictly, but reasonably, enforce local rules. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) ("We give substantial deference to a judge's decision to strictly enforce local summary-judgment rules, reversing only for abuse of discretion.").

**B**

Under Title VII, Igasaki contends the Department committed race discrimination based on his Asian ethnicity, sex discrimination based on his homosexuality, and retaliation based on his termination after filing of administrative discrimination charges. We address Igasaki's race and sex discrimination claims together and then turn to his retaliation claim.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In discrimination cases, "[w]hen a

---

affidavits, parts of the record, and other supporting materials relied upon. … All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

N.D. ILL. L.R. 56.1(b).

defendant moves for summary judgment, the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir.), *reh'g denied* (July 31, 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). Whether a plaintiff offers direct or circumstantial evidence of discrimination, this court made clear in *Ortiz v. Werner Enters., Inc.* that "all evidence belongs in a single pile and must be evaluated as a whole." 834 F.3d 760, 766 (7th Cir. 2016).

One way of proving employment discrimination under Title VII remains the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). "The familiar *McDonnell Douglas* approach requires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue*, 963 F.3d at 601–02. To make a prima facie case under *McDonell Douglas*, a plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer. *Marshall v. Indiana Dep't of Correction*, 973 F.3d 789, 791–92 (7th Cir. 2020). But a plaintiff need not use the *McDonell Douglas* framework after *Ortiz*. At summary judgment, "[w]hat matters is whether [a plaintiff] presented enough evidence to allow the jury to find

in [his] favor." *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020).

Igasaki's race and sex discrimination claims both fail under the *McDonell Douglas* framework for two reasons. First, Igasaki has not raised a genuine dispute of material fact concerning his failure to meet the Department's legitimate expectations. The brunt of the evidence at summary judgment—his performance reviews by Forester—shows that Igasaki's performance was at best, lackluster, and at worst, unacceptable. As Igasaki contends, performance reviews are not indisputable. But "[t]he question is not whether the ratings were *right* but whether the employer's description of its reasons is *honest*." *Gustovich v. AT & T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (per curiam). Other than attacking Forester's veracity, which is a conclusory allegation that does not defeat summary judgment, Igasaki has not offered any evidence of dishonesty. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) ("[M]ere conclusory allegations do not constitute evidence."). Instead, Igasaki takes issue with how Forester rated him.  Disagreement, however, "does not mean that the evaluations were the result of unlawful discrimination." *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 603 (7th Cir. 2011). Igasaki's conclusory allegations on this point do not translate into a prima facie case under the *McDonell Douglas* framework.

Second, Igasaki did not identify a similarly situated employee who received better treatment. Although they need not be identically positioned, "similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects.'" *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*,

442 F.3d 600, 610–11 (7th Cir. 2006)). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Johnson*, 892 F.3d at 895. That is what happened here. Igasaki presented no evidence concerning a similarly situated employee from which the district court could draw a comparison. By failing to do so, Igasaki made review under *McDonell Douglas* functionally impossible. *See Johnson*, 892 F.3d at 895–96. For both these reasons, Igasaki failed to assert a prima facie case for race and sex discrimination under the *McDonell Douglas* framework.

Igasaki's case also falls short under *Ortiz.* The determinative question in discrimination cases is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Under *Ortiz*, we therefore ask whether the totality of the evidence shows discrimination, eschewing any framework or formula. *Id.* Igasaki recites a litany of past wrongs purportedly probative of race or sex discrimination, including mandatory tasks made voluntary for others, increased workload, constant admonishment, arbitrary remote work and identification policies, and general harsh treatment. For Igasaki, this disparate treatment is enough to show that the Department terminated him because of his Asian ethnicity or homosexuality. It is not. Most troublesome for Igasaki is the concession that he "specifically [did not] know what discriminatory reason [Ms. Forester] had" for her harsh treatment of him. Although that alone dooms Igasaki's argument, Forester's treatment may have been the result of Igasaki's performance: a string of poor reviews, corrective

action plans, and suspensions. The summary judgment record shows that Igasaki's race or sex had no role in his termination.

As evidence of discrimination, Igasaki contrasts his past positive performance reviews from 2011 and earlier with his negative performance reviews when Forester took over. Yet Igasaki's past performance is largely irrelevant: "[T]he issue is not the employee's past performance but 'whether the employee was performing well at the time of [his] termination.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991)); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken."). Put differently, past positive evaluations do not guarantee future employment. Nor does such evidence, without more, show discrimination. Igasaki was not performing well when terminated and he had not been performing well for some time. No reasonable jury could have found that the Department discriminated against Igasaki based on his race or sex.[5]

---

[5] Igasaki's sex discrimination claim fails for another reason: he did not present evidence that Forester even knew he was gay. During his deposition, Igasaki stated: "I can't prove that she knew." "While [Igasaki] is entitled, as the nonmoving party, to all reasonable inferences in [his] favor, 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008)). Igasaki's assertion that "it's reasonable to believe [Forester] knew because [another male colleague] was very close to her and he asked me if I was gay, and I

Igasaki also cannot succeed on his retaliation claim. Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). As with discrimination claims, the question for a retaliation claim should always be: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016); *see Ortiz*, 834 F.3d at 765. To show the requisite causal connection, Igasaki primarily relies upon the timing between when he engaged in statutorily protected activity (requesting accommodation for gout and filing an EEOC complaint, both in January 2015) and when he suffered a materially adverse action (his termination in March 2015). Under our caselaw, "[s]uspicious timing is rarely enough to create a triable issue." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). So "[f]or an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Therefore, the two-month gap between Igasaki's protected activities and his termination cannot show retaliation on its own. *Cf. Lord*, 839 F.3d at 564 (drawing causal connection from a two-day period between protected activity and termination).

---

acknowledged it to him, and because there was also personal data information that would have telegraphed to her that I was gay" is not enough to meet his burden.

Additional evidence could corroborate and strengthen Igasaki's assertion of a causal connection based on suspicious timing, but he provides none. "When suspicious timing alone is insufficient to carry the plaintiff's burden, a plaintiff may 'survive summary judgment if there is other evidence that supports the inference of a causal link.'" *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)). From what we can gather, Igasaki argues we should infer causation because his termination marked the culmination of a years-long pattern of discrimination evidenced by his poor performance reviews. He invites us to find causation from layering one inference (a pattern of poor performance reviews) onto another (suspicious timing). This trends towards impermissible speculation; Igasaki must provide more than his mere assertions to defeat summary judgment, especially when his poor performance provided the Department with a nondiscriminatory rationale for his termination. *See Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013) ("Where, as here, there are reasonable, non-suspicious explanations for the timing of Morgan's termination … we will not deny summary judgment solely on the strength of [suspicious timing]."). In sum, no reasonable jury could have found that the Department retaliated against Igasaki.

## C

We next address Igasaki's age discrimination claim under the ADEA, which prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Although Title VII turns on a broader "motivating factor" theory of liability,

the relevant standard under the ADEA is whether age was the "but for" cause of the allegedly discriminatory employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *but cf. McCann v. Badger Mining Corp.*, 965 F.3d 578, 588–89 & n.46 (7th Cir. 2020) (explaining that amendments to the ADA may alter the "but for" standard used in the ADEA). "Title VII and ADEA causation standards are not always the same because of the availability of mixed-motive claims under Title VII but not the ADEA; and … determining whether one factor was causal demands a different factual analysis than determining whether a different factor was causal." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 928 (7th Cir. 2020). Thus, "[i]n this respect, the ADEA is narrower than Title VII of the Civil Rights Act of 1964." *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017). Both statutes nevertheless share similar analytical approaches—*McDonell Douglas* and *Ortiz*—at summary judgment. *See Carson*, 865 F.3d at 532–33 (noting a plaintiff may proceed under either approach).

Igasaki's ADEA claim fails for the same reasons his Title VII claims failed: no prima facie case under *McDonell Douglas* and no holistic evidence under *Ortiz*. Igasaki has not pointed to a genuine dispute of material fact over whether he was fulfilling the Department's legitimate expectations at the time of his termination. Instead, the evidence is overwhelmingly in the opposite direction, supporting the Department's decision to fire him because he was *not* fulfilling that state agency's legitimate expectations. Likewise, Igasaki offered no similarly situated employee who received more favorable treatment based on age, just as he offered no similarly situated employee who received more favorable treatment based on race or sex. This much is clear even without accounting for the more onerous "but for" standard of the ADEA. And moving from

*McDonell Douglas* to *Ortiz* does not help Igasaki. Beyond his poor performance reviews, Igasaki does not offer much, if any, evidence or argument specific to his age discrimination allegations. We reiterate that a speculative inference does not an employment discrimination case make. *See Herzog*, 742 F.3d at 806. Age played no "but for" factor, let alone a factor at all, in Igasaki's termination based on the evidence at summary judgment.

**D**

Finally, we turn to Igasaki's ADA claim that the Department failed to reasonably accommodate his gout disability. The ADA requires that an employer provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability … unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business" of the employer. 42 U.S.C. § 12112(b)(5)(A). To succeed on an ADA claim, an employee must show three elements: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) his disability caused the adverse employment action. *Stelter v. Wis. Physicians Serv. Ins. Corp.*, 950 F.3d 488, 490 (7th Cir. 2020). As part of its ADA obligations, an employer often "engage[s] with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000)).

Igasaki's assertion that the Department failed to accommodate him appears to be a claim that the ADA's interactive process failed. But there is no independent cause of action for

breakdown of the interactive process under the ADA. *Sansone v. Brennan*, 917 F.3d 975, 980 (7th Cir. 2019). Liability arises from these types of allegations only when "the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) (footnote omitted). So Igasaki's claim for a breakdown of the interactive process must thus be ancillary to any ADA claim and is not an ADA claim unto itself. This is because "[i]n this area of the law, we are primarily concerned with the ends, not the means." *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). To the extent that Igasaki alleges the Department stopped or even failed to engage in the ADA's interactive process, his ADA claim fails.

Under the ADA, Igasaki's claim is better construed as a gripe with his "ends," and even then it fails. To help with his gout, the Department provided Igasaki with an ergonomic keyboard, a tape recorder, and authorization for an administrative assistant to type up his written work product. His complaint is not that these accommodations by the Department were inappropriate or unreasonable, but that the Department should have done more, such as fulfilling his request for flexible deadlines. Yet "[i]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). And here, the Department provided good reason to reject Igasaki's deadlines request for it lacked support in his doctor's note. That a plaintiff wants more or different accommodations does not make what he did receive unreasonable. *See Rehling*, 207 F.3d at 1016 ("The ADA seeks to ensure that qualified individuals are accommodated in the

workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations."). Because disagreement with an employer's reasonable accommodation under the ADA cannot defeat summary judgment, Igasaki's reasonable accommodation claim fails.

## III

The district court correctly granted summary judgment to the Department on each of Igasaki's five claims under Title VII, the ADEA, and the ADA, so we AFFIRM.